IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **Tammy Jean Robinette**<br>479 County Road 56 East<br>Marbury, Alabama, 36051,<br><br>**James Bryan Robinette**<br>479 County Road 56 East<br>Marbury, Alabama, 36051,<br><br>    Plaintiffs,<br><br>v.<br><br>**Billy Wayne Fulmer**<br>Individually and in his official capacity as<br>Sheriff of Chilton County, Alabama<br>c/o Chilton County Commission<br>500 Second Avenue North<br>Clanton, Alabama, 35045-3421;<br><br>**Officer Warren Garris**<br>500 Second Avenue North<br>Clanton, Alabama, 35045-3421;<br><br>**Dispatcher L. Graham**<br>500 Second Avenue North<br>Clanton, Alabama, 35045-3421;<br><br>**Jailer Jason Davis**<br>500 Second Avenue North<br>Clanton, Alabama, 35045-3421;<br><br>**City of Hoover, Alabama**<br>100 Municipal Drive<br>Hoover, Alabama, 35216;<br><br>**Flores**<br>100 Municipal Drive<br>Hoover, Alabama, 35216; and<br><br>**Fictitious Defendant A** is the female officer<br>who strip-searched Tammy Parker at the | )  2006 JUN 21  P 3: 50<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case Number: 2:06cv556-VPM<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Page 1 of 17

| | |
|---|---|
| Chilton County jail on or about August 14, 2004, | ) ) ) |
| Defendants. | ) ) |

# COMPLAINT

**JURISDICTION:**

1. This Complaint alleges claims for violations of rights secured by the U.S. Constitution that Plaintiffs aver are actionable under 42 U.S.C. § 1983, and, therefore, this Court has jurisdiction under 28 U.S.C. § 1331.

2. This Complaint also alleges claims for violations of rights secured by State law that are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy under Article III of the U.S. Constitution, and, therefore, this Court has supplemental jurisdiction over the State law claims under 28 U.S.C. § 1367(a).

**PARTIES:**

3. Plaintiff Tammy Jean Sanders Parker Robinette (hereafter "Tammy" or "Tammy Robinette") is a natural person, a U.S. citizen currently residing at 479 County Road 56 East, Marbury, Alabama, 36051, and she has been a resident of the State of Alabama at all time relevant to this action.

4. Since October 18, 2002, Tammy Robinette had been married to Plaintiff James Bryan Robinette (hereafter "James" or "James Robinette"), who is a natural person, a U.S. citizen residing at 479 County Road 56 East, Marbury, Alabama, 36051, and he has been a resident of the State of Alabama at all time relevant to this action.

5. On or about August 14 and 15, 2004, Defendant Billy Wayne Fulmer was the Sheriff of Chilton County, Alabama. Plaintiffs are suing him in his individual and in his official capacities.

6. Defendant Warren Garris was a Chilton County law enforcement officer at the time of the events giving rise to this action. He arrested Tammy Robinette in Chilton County, Alabama, on an outstanding warrant for a person named "Tammy Stewart Parker" issued by the City of Hoover, Alabama. Plaintiffs are suing Garris in his individual capacity.

7. Defendant L. Graham was working as a Chilton County dispatcher at the time of the events giving rise to this action, and, upon reasonable belief, Plaintiffs aver that, in the course of his or her duties, Graham was the person responsible for comparing identifying information about Tammy Robinette with identifying information available to Graham about a warrant issued by Hoover for a person named "Tammy Stewart Parker." Plaintiffs are suing Graham in an individual capacity.

8. Defendant Jason Davis was working as a Chilton County jailer at the time of the events giving rise to this action, and, upon reasonable belief, Plaintiffs aver that, in the course of his duties, Davis was the person responsible for booking Plaintiff and comparing identifying information about Tammy Robinette with identifying information available to Davis about a warrant issued by Hoover for a person named "Tammy Stewart Parker." Plaintiffs are suing Davis in an individual capacity.

9. Defendant City of Hoover, Alabama, is a municipal corporation located in Jefferson and Shelby Counties in Alabama. City Hall is located at 100 Municipal Drive, Hoover, Alabama 35216.

10. Defendant Flores was working for Hoover at the time of the events giving rise to this action, and upon reasonable belief, Plaintiffs aver that, in the course of his or her duties, Flores was responsible for providing Chilton County with the identifying information from an outstanding arrest warrant issued by Hoover for a person named "Tammy Stewart Parker." Plaintiffs are suing Flores

in an individual capacity.

11.     Fictitious Defendant A was working as a Chilton County jailer at the time of the events giving rise to this action, and, in the course of her duties, strip-searched Tammy Robinette. Plaintiffs are suing her in an individual capacity.

**FACTS:**

12.     On August 14, 2004, at about 9:15 p.m., Plaintiff James Robinette was driving a car along County Road 59 in Chilton County, Alabama. His wife, Plaintiff Tammy Robinette, was a passenger in the car. The Robinettes reached a roadblock near the intersection of County Roads 59 and 24 where two or more officers from the Chilton County Sheriff's Department where conducting a check of drivers' licenses. James stopped at the roadblock. One of the officers, who upon reasonable belief was Defendant Warren Garris, approached the Robinettes' car and asked James for his licence, registration, and proof of insurance. James provided the requested documents. The officer took them and walked to the back of the car and looked at the tag. The officer then returned to the driver's window and asked for Tammy's driver's license, which she provided. The officer asked if all of the information on the licenses was correct. Tammy told the officer that the name and address on her license were not current. Her license showed her name as "Tammy Sanders Parker." She told the officer that "Sanders" was her maiden name and "Parker" was the name of her first husband. Tammy told the officer that her married name was now "Robinette" and that her current address was the same as that shown on James's license.

13.     The officer took the Robinettes' drivers' licenses to a police vehicle where, according to records of the Chilton County Sheriff's Department, the officer gave the following items of information from Tammy's driver's license to a Chilton County dispatcher, who upon reasonable belief was Defendant L. Graham: Name ("Tammy Sanders Parker"), address, race, sex, date of birth,

height, weight, hair color, eye color, driver's license number, driver's license expiration date, and social security number. The dispatcher then checked for outstanding warrants.

14.     The warrant check on the name "Tammy Sanders Parker" revealed an outstanding warrant issued by the City of Hoover Police Department for a person named "Tammy Stewart Parker" for the misdemeanor offense of negotiating a worthless negotiable instrument. The warrant information available to the Chilton County dispatcher included the full name, date of birth, sex, race, height, weight, eye color, hair color, driver's license number, and social security number of the Tammy Stewart Parker wanted for the misdemeanor offense. The only items of identifying information that exactly matched that of Tammy Robinette were the first name, last name, race, sex, and hair color (brown). The birth dates were different by over three years; the driver's license numbers were different; the social security numbers were different; the weight was different by 20 pounds; the eye color was different, and the middle names were different. Nonetheless, the Chilton County dispatcher contacted the Hoover Police Department about the outstanding warrant.

15.     While the Chilton County dispatcher was checking on the outstanding warrant, the Chilton County officer who had possession of the Robinettes' drivers' licenses returned to the Robinettes' car, told them there was a problem that he was checking on, and asked them to pull to the side of the road and wait, which they did. The officer left again and returned after several more minutes, saying it would be only a few more minutes. James asked what was the hold up. The officer replied that he was waiting on the City of Hoover to call him back. The officer then returned to his vehicle.

16.     Approximately 30 minutes after the Chilton County dispatcher contacted Hoover about the warrant, an officer or dispatcher with Hoover, who upon reasonable belief was Defendant Flores, confirmed the warrant and asked Chilton County to arrest Tammy and hold her in Chilton

Page 5 of 17

County until morning when an officer from Hoover could pick her up.

17.   At approximately 9:45 p.m., the officer who had taken the Robinette's drivers' licenses again returned to the their car, this time to Tammy's window. He asked her to step out of the car because there was a warrant for her arrest. Tammy stepped out of the car and immediately began asking questions about the warrant and what it was for. The officer said the warrant had been issued by the City of Hoover for a bad check and that he had confirmed with Hoover that officials there wanted her arrested and held for pick up. Tammy told the officer that she had never written a check in the City of Hoover and that she did not have a checking account. She then asked to whom the check had supposedly been written. The officer responded that the warrant was for a Tammy Parker, that he did not have any information about the check, and that Hoover would have information about the bad check on the warrant.

18.   The officer asked Tammy if she had anything in her pockets or on her person. She told him no and pulled out the lining of her pockets for him to see. The officer asked Tammy to place her hands behind her, which she did; he then handcuffed her and placed her in a Chilton County law enforcement vehicle.

19.   James asked the officer what he should do and whether he should follow them to the jail. The officer told him to go home and wait on Tammy to call.

20.   The same officer who had arrested Tammy drove her to the Chilton County jail. Another officer employed by the Chilton County Sheriff's Department accompanied them, riding in the front passenger's seat. During the trip, Tammy repeatedly told the officers that she had never written a check to a business located in the City of Hoover and that she had no checking account. She also asked the officers for more information about the check, when it was written, and to whom it was written. Tammy also told the officers that she had never been in trouble with the law before

and that she had never received so much as a traffic ticket before. The only thing the officers said to Tammy was that they would get all of that information from the warrant when they got to the jail.

21. When they arrived at the Chilton County jail, the officer who had arrested Tammy turned her over to a jail officer who upon reasonable belief was Defendant Jason Davis. The arresting officer also gave the jail officer Tammy's driver's license. After that, Tammy did not see the arresting officer again.

22. Two jail officers, Defendant Davis and Fictitious Defendant A, were involved in booking Tammy into the jail. First, they completed several items of paperwork including an Inmate Data form, which stated the charge against Tammy as "Hold for Hoover Hit Confirmation in File," a Medical Screening Form, and an FBI arrest form. The jailors had Tammy's driver's license. One of them asked if the information on the driver's license was correct and Tammy explained to both of them that her married name was now "Robinette." She also gave them her current address. While the jailors were filling out paperwork, Tammy explained to both of them that she had never written a check in Hoover, had no checking account, and had never been in trouble with the law before. The jailors told Tammy that they hadn't received the warrant from Hoover yet. During this time, Tammy was still wearing handcuffs.

23. After filling out paperwork for a time, jailor Davis took several items of personal property from Tammy. Then, the female officer took Tammy into a room where she was instructed to take off all of her clothes. After Tammy had completely disrobed, the female jailor instructed Tammy to squat with her knees apart, cough, and pull her buttock cheeks apart and cough. After that, the female jailor gave Tammy an orange jumpsuit and instructed her to put it on, which she did.

24. Plaintiffs aver that Tammy was strip-searched pursuant to a policy or practice of the Chilton County Sheriff's Department of strip-searching everyone booked into the jail regardless of

whether the offense for which they were arrested was a felony or a misdemeanor, a violent offense or a non-violent offense; regardless of whether the individual being booked is suspected of having weapons, drugs, or other contraband; and regardless of whether the individual being arrested is going to be placed in the general jail population or in an isolated holding cell.

25. After the strip-search, Tammy was photographed and fingerprinted. Then, Tammy was locked in a jail cell by herself where she was told she was waiting for someone to arrive from Hoover to pick her up and take her there.

26. At approximately 11:15 p.m., a Sergeant Davis from the City of Hoover arrived. The female jailor who had strip-searched Tammy came and got her out of the cell. The female jailor had already given Sgt. Davis all of Tammy's personal belongings. Sergeant Davis told Tammy that she could go into the restroom there in the jail and change back into her own clothes, which she did. Both the female officer and Sgt. Davis waited outside the door to the restroom while Tammy changed.

27. After Tammy had changed clothes, Sgt. Davis handcuffed her and placed her in his police vehicle. The two of them then proceeded to the Hoover Police Department.

28. During the trip to Hoover, Tammy told Sgt. Davis that she had never written a check in the City of Hoover, that she had no checking account, that she had never been in trouble with the law, and that she had never even received a traffic ticket before. She also asked questions about the bad check, such as to whom it had been written and when.

29. As soon as they arrived at the Hoover Police Department, Sgt. Davis took Tammy inside and immediately asked another officer to bring him a copy of the warrant. When the warrant arrived, Sgt. Davis reviewed it. The officer who had brought the warrant removed Tammy's handcuffs and asked her to have a seat. Sgt. Davis and the officer who had brought him the warrant

then left the room for several minutes.

30.     When Sgt. Davis returned he told Tammy that she was not the person for whom the warrant had been issued and that he would drive her back to Chilton County immediately. He then let Tammy call her husband to let him know that she would be returning to the Chilton County jail where he could pick her up.

31.     On the return trip to the Chilton County jail, 15 or 20 minutes before they arrived, Sgt. Davis allowed Tammy to use his cell phone to again call her husband and let him know when to meet them.

32.     When they arrived at the Chilton County jail, Sgt. Davis drove to the back door. James Robinette was parked out front. When Sgt. Davis and Tammy reached the back door, the female jailor who had strip-searched Tammy opened the door and said to Sgt. Davis "Back so soon." Sgt. Davis told her that the warrant had not been verified correctly. The female jailor responded that she had never looked at the warrant. The female jailor then took Tammy to the front door where James Robinette was waiting for her.

33.     For several weeks after this incident, Tammy feared that she might again be wrongly believed to be the person wanted by Hoover and have to go through the same ordeal she had been through on August 14 and 15, 2004. Because of that fear she left the house as little as possible and did not want to drive for several weeks.

**CLAIMS ACTIONABLE UNDER 42 U.S.C. § 1983:**

### COUNT I - ARREST VIOLATED FOURTH AMENDMENT

34.     The Fourth Amendment to the U.S. Constitution secures an individual's right against unreasonable seizure by requiring States to, among other things, provide a fair and reliable

determination of probable cause as a condition for any significant pretrial restraint of liberty. Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been, or is being, committed and that the individual arrested is the guilty party. An arrest without probable cause violates the Fourth Amendment.

35.    Here, the identifying information that Tammy Robinette provided to Defendant Garris, the officer who took her license at the road-block, and that Garris in turn provided to Defendant Graham foreclosed all reasonable possibility that Tammy was the person wanted by Hoover for negotiating a worthless negotiable instrument. From the information available to Defendants Garris and Graham they could have and should have determined that Tammy Robinette had a different middle name, different date of birth, different social security number, different driver's license number, and different eye color than the person wanted by Hoover and therefore was not the person wanted by Hoover. Also, Tammy Robinette told Defendant Garris that she had never written a check in Hoover and had no checking account. An arresting officer and dispatcher who had actually compared of all of the identifying information that Tammy Robinette provided to Garris with identifying information available to them about the person wanted by Hoover could not reasonably have believed that Tammy Robinette was the person wanted in Hoover. By arresting Tammy anyway, Defendants Garris and Graham violated Tammy Robinette's Fourth Amendment right to be free from unreasonable seizure.

36.    Plaintiffs aver that if Defendants Garris and Graham provided to Defendant Flores all of the information that Tammy provided to Defendant Garris, Defendant Flores could have and should have determined that Tammy Robinette had a different middle name, different date of birth, different social security number, different driver's license number, and different eye color than the

person wanted by Hoover and therefore was not the person wanted by Hoover. Therefore, if Defendants Garris and Graham provided to Defendant Flores all of the information that Tammy provided to Defendant Garris, Defendant Flores by instructing Defendants Garris and Graham to arrest and hold Tammy violated Tammy's Fourth Amendment right to be free from unreasonable seizure.

37. Following her arrest without probable cause, Tammy Robinette was hand-cuffed, strip-searched, photographed, fingerprinted, and jailed without probable cause and in further violation of her Fourth Amendment rights.

38. The wrongful actions of individuals who were involved in the identification and arrest of Tammy Robinette were the direct result of a custom or practice of Sheriff Fulmer and/or the City of Hoover created by failure to establish adequate policies or procedures for officers and employees to use to verify the identity of persons named in the warrants, and/or failure to adequately train officers and employees in use of the policies and procedures promulgated to verify the identity of persons named in the warrants, and/or failure to adequately enforce the officers' and employees' use of the policies and procedures promulgated to verify the identity of persons named in the warrants. Said customs, policies, procedures, and/or failings constituted deliberate indifference to the Fourth Amendment rights of persons with whom officers and employees of the Chilton County Sheriff's Department and/or Hoover came into contact in the course of performing their duties of arresting persons pursuant to outstanding warrants.

39. Accordingly, Plaintiffs maintain, that the conduct of Defendants Garris, Graham, Flores, Fulmer, and/or Hoover violated Tammy Robinette's Fourth Amendment right to be free from arrest without probable cause and, as a result, she was injured or damaged as set forth herein.

## COUNT II - IMPRISONMENT VIOLATED FOURTEENTH AMENDMENT

40. The Fourteenth Amendment to the U.S. Constitution secures an individual's right against false imprisonment without due process. Exhibiting deliberate indifference to an individual's right against false imprisonment violates the Fourteenth Amendment. Failure to take any steps to actually compare an individual's identifying information to that in an outstanding warrant for arrest of a person by a similar name, when a comparison would have shown that the individual was not the person wanted, has been ruled, prior to the events at issue in this case, to constitute deliberate indifference.

41. Here Defendants Garris, Graham, Flores, Davis, and/or Fictitious Defendant A all had information available to them before and after Tammy's arrest that would have shown that Tammy was not the person wanted by Hoover. Nonetheless, none of the Defendants took steps to actually compare Tammy's identifying information to the identifying information available to them about the person wanted by Hoover. Had they done so, they would have discovered that Tammy was not the person wanted. Defendants' failure to compare the identifying information constituted deliberate indifference to Tammy's right against false imprisonment.

42. Defendants' failure to take steps to compare the identifying information that Tammy provided with the available identifying information about the person wanted by Hoover was the direct result of a custom or practice of Sheriff Fulmer and/or the City of Hoover created by failure to establish adequate policies or procedures for officers and employees to use to verify the identity of persons named in the warrants, and/or the failure to adequately train officers and employees in the use of the policies and procedures promulgated to verify the identity of persons named in the warrants, and/or the failure to adequately enforce the officers' and employees' use of the policies and procedures promulgated to verify the identity of persons named in the warrants. Said failings

constituted deliberate indifference to the Fourteenth Amendment rights of persons with whom employees by the Chilton County Sheriff's Department and/or the City of Hoover came into contact in the course of performing their duties of identifying persons wanted on outstanding warrants.

43. Accordingly, Plaintiffs maintain, that Defendants' conduct alleged herein violated Tammy's Fourteenth Amendment Due Process right to be free from false imprisonment and, as a result, she was injured or damaged as set forth herein.

### COUNT III - STRIP-SEARCH VIOLATED FOURTH AMENDMENT

44. The Fourth Amendment to the U.S. Constitution secures an individual's right against unreasonable searches.

45. Here, Tammy Robinette was arrested pursuant to a warrant for someone else issued by another jurisdiction for the non-violent misdemeanor crime of writing a bad check. While being held at the Chilton County jail for pick up by another jurisdiction, she was subjected to a full strip-search. During that search she was required to completely disrobe, squat with her knees apart, cough, pull her buttock cheeks apart, and cough again.

46. Chilton County jail personnel had no reason to believe that Tammy had weapons, drugs, or other contraband on her person. After the strip search, Tammy was not placed in a general population cell but in a cell by herself.

47. Plaintiffs aver that Tammy was strip-searched pursuant to a policy or practice of the Chilton County Sheriff's Department of strip-searching everyone booked into the jail regardless of whether the offense for which they were arrested was a felony or a misdemeanor, a violent or a non-violent offense; regardless of whether the individual being booked is suspected of having weapons, drugs, or other contraband; and regardless of whether the individual being arrested is going to be placed in the general jail population or in an isolated holding cell.

48.     Plaintiffs aver that both the strip-search policy of the Chilton County Sheriff's Department and the strip-search of Tammy specifically violated her Fourth Amendment right to be free from unreasonable searches and, as a result, she was injured or damaged as set forth herein.

## COUNT IV - DEMAND FOR TAMMY'S DRIVER'S LICENSE VIOLATED FOURTH AMENDMENT

49.     The Fourth Amendment to the U.S. Constitution secures an individual's right against unreasonable searches.

50.     Here, Tammy was not driving a vehicle when the Chilton County Sheriff's Department stopped the vehicle in which she was riding.  Tammy was only a passenger.

51.     When the officer demanded Tammy's driver's license, he gave no indication that she had any right to refuse his demand and she therefore complied.

52.     Under the circumstances, there was no reasonable basis for demanding Tammy's driver's license.  Therefore, the demand for Tammy's driver's license violated her Fourth Amendment rights.

53.     Plaintiffs aver that the officer demanded Tammy's driver's license either pursuant to a policy or practice of the Chilton County Sheriff's Department of routinely demanding passengers' driver's licenses or as a result of inadequate training by Sheriff Fulmer.

**CLAIMS ACTIONABLE UNDER STATE LAW:**

## COUNT V - NEGLIGENCE AND/OR GROSS NEGLIGENCE

54.     Defendants Garris, Graham, Flores, Davis, and Fictitious Defendant A each owed Plaintiff Tammy Robinette a ministerial duty to actually compare the identifying information she provided them to the available identifying information about the person wanted by the City of Hoover. Given the lack of similarity between the identifying information Tammy provided and the

identifying information available to each of these Defendants about the person wanted by Hoover, no reasonable person in the position of Defendants Garris, Graham, Flores, Davis, or Fictitious Defendant A could have believed that Tammy was the person wanted by Hoover. Defendants' failure to carry out their ministerial duties of actually comparing the information before arresting Tammy and booking her was a breach of their ministerial duties that damaged both Plaintiffs and is therefore actionable as negligence and/or gross negligence.

55. Further, Defendant Sheriff Fulmer and the City of Hoover are vicariously liable for the negligence and/or gross negligence of their employees in performing their ministerial functions.

## COUNT VI - FALSE ARREST AND/OR IMPRISONMENT

56. Defendants Garris, Graham, Flores, Davis, and Fictitious Defendant A were responsible for Tammy's false arrest and imprisonment for several hours without probable cause and/or without a valid warrant. Said conduct is actionable as false arrest and/or false imprisonment.

57. Sheriff Fulmer and the City of Hoover are vicariously liable for the false arrest and/or imprisonment caused by their employees.

## COUNT VII - MALICIOUS PROSECUTION

58. Defendants Garris, Graham, Flores, Davis, and Fictitious Defendant A were responsible for the malicious prosecution of Plaintiff Tammy Robinette without probable cause.

## COUNT VIII - WANTONNESS, WILFULNESS, AND/OR BAD FAITH

59. The failure of Defendants Garris, Graham, Flores, Davis, and Fictitious Defendant A to make any effort to compare the identifying information that Tammy provided to that of the person wanted by Hoover, and/or the Defendants' misidentification of Tammy under the circumstances, and/or Defendants' continued detention of Tammy after any reasonable officer with the information available to Defendants would have known that there was no probable cause for

believing Tammy was the person wanted by Hoover was the result of wrongful conduct that was wanton, malicious, wilful, and/or in bad faith.

### COUNT IX - ASSAULT AND BATTERY

60. Defendant Davis and Fictitious Defendant A, by their strip search of Plaintiff Tammy Robinette, caused her fear and apprehension of harm, and they are therefore liable for assault and battery.

61. To the extent Defendant Davis and Fictitious Defendant A were acting pursuant to jail policy in conducting the strip search, Defendant Fulmer is vicariously liable for their assault.

### COUNT X - FAILURE TO TRAIN

62. Defendants Fulmer and the City of Hoover are responsible for training their employees in the identification of wanted persons. The duty of these Defendants to train employees in identification of wanted persons is a ministerial function. The circumstances of this case demonstrate a failure on the part of Defendants Fulmer and/or the City of Hoover to train their employee in the identification of wanted persons that resulted in the wrongful arrest and imprisonment of Tammy Robinette. Defendants Fulmer and the City of Hoover are liable for their training failures.

### COUNT XI - LOSS OF CONSORTIUM

63. As a result of Defendants' conduct, Plaintiff James Robinette was deprived of his wife's services and suffered the mental and emotional anguish of having his wife arrested and taken from him.

**DAMAGES:**

64. As a result of Defendants' conduct Tammy Robinette suffered deprivation of liberty, distress, humiliation, embarrassment, and fear that continued during and after her release from

wrongful incarceration. For several weeks after this incident, she feared that she might again be wrongly believed to be the person wanted by Hoover and have to go through the same ordeal she had been through on August 14 and 15, 2004. For several weeks, Tammy rarely left the house and did not drive. Also, Tammy now has a recorded mug shot and fingerprints and an FBI file that she did not have before this incident.

65. As a result of Defendants' conduct James Robinette suffered the mental and emotional anguish of having his wife arrested and taken from him and the loss of her services at home because of her emotional distress over the incident and her fear of re-arrest that continued after her release from wrongful incarceration.

WHEREFORE Plaintiffs claim compensatory and punitive monetary damages in an amount to be determined by a jury and such other relief to which the facts of this Complaint show Plaintiffs are entitled.

**PLAINTIFFS DEMAND A JURY TRIAL OF ALL ISSUES IN THIS ACTION**

George B. Azar (AZA002)

Elizabeth C. Wible (WIB002)

AZAR & AZAR, L.L.C.
260 Washington Avenue
Montgomery, AL 36104
   (334) 265-8551
FAX:  (334) 261-3489