## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **Tammy Jean Robinette**, | ) | |
| 479 County Road 56 East, | ) | |
| Marbury, Alabama, 36051; and | ) | |
| | ) | |
| **James Bryan Robinette,** | ) | |
| 479 County Road 56 East, | ) | |
| Marbury, Alabama, 36051; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case Number:** 2:06cv556-MHT |
| | ) | |
| **Billy Wayne Fulmer,** | ) | **JURY TRIAL DEMANDED** |
| individually and in his official capacity as | ) | |
| Sheriff of Chilton County, Alabama, | ) | |
| c/o Chilton County Commission, | ) | |
| 500 Second Avenue North, | ) | |
| Clanton, Alabama, 35045-3421; | ) | |
| | ) | |
| **Chilton County, Alabama,** | ) | |
| 500 Second Avenue North, | ) | |
| Clanton, Alabama, 35045-3421; | ) | |
| | ) | |
| **County Commission of Chilton** | ) | |
| **County Alabama,** | ) | |
| 500 Second Avenue North, | ) | |
| Clanton, Alabama, 35045-3421; | ) | |
| | ) | |
| **Chilton County E-911 Board,** | ) | |
| 500 Second Avenue North, | ) | |
| Clanton, Alabama, 35045-3421; | ) | |
| | ) | |
| **Warren Garris,** | ) | |
| individually and in his official capacity, | ) | |
| 500 Second Avenue North | ) | |
| Clanton, Alabama, 35045-3421; | ) | |
| | ) | |
| **Shane Mayfield,** | ) | |
| individually and in his official capacity, | ) | |
| 500 Second Avenue North | ) | |
| Clanton, Alabama, 35045-3421; | ) | |
| **Cheryl Robinson,** | ) | |

individually and in her official capacity,                    )
500 Second Avenue North,                                      )
Clanton, Alabama, 35045-3421;                                )
                                                             )
**Linda Graham,**                                            )
individually and in her official capacity,                    )
81 Mary Street,                                              )
Thorsby, Alabama, 35171;                                     )
                                                             )
**Shane Lockhart,**                                          )
individually and in his official capacity,                    )
500 Second Avenue North,                                      )
Clanton, Alabama, 35045-3421;                                )
                                                             )
**Jason Davis,**                                             )
individually and in his official capacity,                    )
500 Second Avenue North,                                      )
Clanton, Alabama, 35045-3421;                                )
                                                             )
**Angie Smith**,                                             )
individually and in her official capacity,                    )
500 Second Avenue North,                                      )
Clanton, Alabama, 35045-3421; and                            )
                                                             )
**City of Hoover, Alabama,**                                 )
100 Municipal Drive,                                         )
Hoover, Alabama, 35216;                                      )
                                                             )
        Defendants.                                          )

## AMENDED AND SUBSTITUTED COMPLAINT

**JURISDICTION:**

1.      This Complaint alleges claims for violations of rights secured by the U.S.

Constitution that Plaintiffs aver are actionable under 42 U.S.C. § 1983, and, therefore, this Court has

jurisdiction under 28 U.S.C. § 1331.

2.      This Complaint also alleges claims for violations of rights secured by State law that

are so related to the claims within this Court's original jurisdiction that they form a part of the same

case or controversy under Article III of the U.S. Constitution, and, therefore, this Court has

supplemental jurisdiction over the State law claims under 28 U.S.C. § 1367(a).

**PARTIES:**

3.      Plaintiff Tammy Jean Sanders Parker Robinette (hereafter "Tammy" or "Tammy Robinette") is a natural person, a U.S. citizen currently residing at 479 County Road 56 East, Marbury, Alabama, 36051, and she has been a resident of the State of Alabama at all time relevant to this action.

4.      Since October 18, 2002, Tammy Robinette had been married to Plaintiff James Bryan Robinette (hereafter "James" or "James Robinette"), who is a natural person, a U.S. citizen currently residing at 479 County Road 56 East, Marbury, Alabama, 36051, and he has been a resident of the State of Alabama at all time relevant to this action.

5.      On or about August 14 and 15, 2004, Defendant Billy Wayne Fulmer was the Sheriff of Chilton County, Alabama.  At all times relevant to this action, Defendant Fulmer employed one or more Defendants in this action; made decisions regarding hiring, training, and/or supervising one or more Defendants in this action; established and enforced one or more of the policies, practices, and/or procedures at issue in this action; and took other actions at issue in this action.  Plaintiffs are suing him in his individual and in his official capacities.  His place of business is 500 Second Avenue North, Clanton, Alabama, 35045-3412.

6.      Defendant Chilton County E-911 Board ("E-911 Board") is a governmental entity that employs 911 call takers and dispatchers in Chilton County, Alabama.  On or about August 14 and 15, 2004, the E-911 Board was the employer of one or more Defendants in this action.  The E-911 Board's place of business is 500 Second Avenue North, Clanton, Alabama, 35045-3412.

7.      Defendant Chilton County, Alabama, is, according to Ala. Code § 11-1-2, a body corporate with power to sue or be sued in any court of record.  On or about August 14 and 15, 2004,

Defendant Chilton County may have employed one or more Defendants in this action. Chilton County's place of business is 500 Second Avenue North, Clanton, Alabama, 35045-3412.

8.    Defendant County Commission of Chilton County, Alabama, is a governmental entity that is the governing body of Chilton County and the Commissioners may be the persons authorized to appoint and remove board members on the E-911 Board. Also, the Chilton County Commission may have been responsible for one or more of the policies and practices at issue in this action. The Chilton County Commission's place of business is 500 Second Avenue North, Clanton, Alabama, 35045-3412.

9.    On or about August 14 and 15, 2004, Defendant Warren Garris was a Chilton County law enforcement officer. On August 14, 2004, he arrested Tammy Robinette in Chilton County, Alabama, on an outstanding warrant for a person named "Tammy Stewart Parker" issued by the City of Hoover, Alabama. Plaintiffs are suing Garris in his official and individual capacities.

10.    On or about August 14 and 15, 2004, Defendant Shane Mayfield was Chief Deputy Sheriff of the Chilton County Sheriff's Department. As part of his job, he was responsible for hiring, training, and/or supervising dispatchers employed by the E-911 Board. Plaintiffs are suing Mayfield in his official and individual capacities.

11.    On or about August 14 and 15, 2004, Defendant Cheryl Robinson was employed by the E-911 Board and was responsible for hiring, training, and/or supervising dispatchers employed by the E-911 Board. Plaintiffs are suing Robinson in her official and individual capacities.

12.    On or about August 14 and 15, 2004, Defendant Linda Graham was employed by the E-911 Board as a dispatcher, and, in the course of her duties, Graham was the person responsible for identifying whether there were any outstanding warrants for the arrest of Tammy Robinette. Plaintiffs are suing Graham in her official and individual capacities.

13.     On or about August 14 and 15, 2004, Defendant Shane Lockhart was the Warden of the Chilton County Jail.  As part of his job, Lockhart was responsible for hiring, training, and/or supervising Chilton County jail corrections officers.  Plaintiffs are suing Lockhart in his official and individual capacities.

14.     On or about August 14 and 15, 2004, Defendant Jason Davis was working as a jail corrections officer in the Chilton County Jail.  In the course of his duties, Davis was one of the officers responsible for booking Plaintiff Tammy Robinett and comparing identifying information provided by her with identifying information available to Davis from an NCIC report and/or a warrant issued by the City of Hoover for a person named "Tammy Stewart Parker."  Plaintiffs are suing Davis in his official and individual capacities.

15.     On or about August 14 and 15, 2004, Defendant Angie Smith was either a law enforcement officer with the Chilton County Sheriff's Department or a jail corrections officer in the Chilton County Jail.  In the course of her duties, Smith strip-searched Tammy Robinette.  Smith was also involved in the process of booking Plaintiff Tammy Robinette.  Plaintiffs are suing Smith in her official and individual capacities.

16.     Defendant City of Hoover, Alabama, is a municipal corporation located in Jefferson and Shelby Counties in Alabama.  Hoover City Hall is located at 100 Municipal Drive, Hoover, Alabama 35216.  On or about August 14 and 15, 2004, Hoover had an outstanding warrant for the arrest of  Tammy Stewart Parker.

**FACTS:**

17.     On August 14, 2004, at about 9:15 p.m., Plaintiff James Robinette was driving a car along County Road 59 in Chilton County, Alabama.  His wife, Plaintiff Tammy Robinette, was a passenger in the car.  The Robinettes reached a roadblock near the intersection of County Roads 59

and 24 where two or more officers from the Chilton County Sheriff's Department where conducting a check of drivers' licenses. James stopped at the roadblock. One of the officers, who upon reasonable belief was Defendant Warren Garris, approached the Robinettes' car and asked James for his licence, registration, and proof of insurance. James provided the requested documents. The officer took them and walked to the back of the car and looked at the tag. The officer then returned to the driver's window and asked for Tammy's driver's license, which she provided. The officer asked if all of the information on the licenses was correct. Tammy told the officer that the name and address on her license were not current. Her license showed her name as "Tammy Sanders Parker." She told the officer that "Sanders" was her maiden name and "Parker" was the name of her first husband. Tammy told the officer that her married name was now "Robinette" and that her current address was the same as that shown on James's license.

18.    The officer, Defendant Garris, took the Robinettes' drivers' licenses to a police vehicle. There, by radio, he contacted dispatcher Linda Graham and read to her the Alabama driver's license number from each driver's license.

19.    Defendant Graham checked the status of each driver's license and then, apparently, used the names obtained via the driver's license numbers to check for outstanding warrants in the National Crime Information Center ("NCIC") database.

20.    Defendant Graham's NCIC check on the name "Tammy Sanders Parker" revealed an outstanding warrant issued by the City of Hoover Police Department for a person named "Tammy Stewart Parker" for the misdemeanor offense of negotiating a worthless negotiable instrument. The Hoover warrant information available to Defendant Graham included the first, middle, and last names, date of birth, sex, race, height, weight, eye color, hair color, driver's license number, and social security number of the Tammy Stewart Parker wanted for the misdemeanor offense. The only

items of identifying information that exactly matched that of Tammy Robinette were the first name, last name, race, sex, and hair color (brown). The birth dates were different by over three years; the driver's license numbers were different; the social security numbers were different; the weight was different by 20 pounds; the eye color was different; and the middle names were different.

21.     Defendant Graham negligently, recklessly, wantonly, and/or deliberately ignored all of obvious differences between the identifying information on the NCIC database about Tammy Stewart Parker and the identifying information shown on Tammy Robinette's then current driver's license in the name of Tammy Sanders Parker. Defendant Graham told Defendant Garris that she had a warrant hit on Tammy Parker and that she was going to call Hoover to see if Hoover wanted her held for extradition.

22.     After talking to Defendant Graham, Defendant Garris told the Robinettes there was a problem that he was checking on and asked them to pull to the side of the road and wait, which they did.

23.     Thereafter, Defendant Graham telephoned the City of Hoover Police Department. An employee of Hoover named Andrea Luckett received the call. Defendant Graham told Luckett that Chilton County was holding a Miss Tammy Stewart Parker (not Tammy Sanders Parker, the name on Tammy Robinette's driver's license) in a traffic stop and wanted to see if Hoover still wanted her on the warrant shown on the NCIC database. Luckett asked Defendant Graham to hold for a moment. While Defendant Graham was holding, she received and responded to radio calls from Chilton County officers. When Luckett returned to the phone, Defendant Graham was in the middle of a radio communication with a Chilton County officer. Luckett asked Defendant Graham for the social security number of the subject being held. Defendant Graham told Luckett to wait a second and finished her radio communication with the Chilton County officer. When Defendant

Graham finished with her communication with the officer she read Luckett the social security number of Tammy Stewart Parker, not the social security number of Tammy Sanders Parker (Robinette). Defendant Graham through negligence, recklessness, wantonness, and/or deliberate indifference was apparently reading Luckett the social security number from the information Hoover has entered on the NCIC database about the warrant for Tammy Stewart Parker.

24.    Luckett told Defendant Graham that she would need to confirm with a Hoover warrant officer whether Hoover wanted the subject arrested for extradition and that it might take several minutes for the warrant officer to respond. Defendant Graham told Luckett that Chilton County would hold the subject until Luckett called back.

25.    Approximately 30 minutes after the Robinettes were initially stopped, Luckett of Hoover called Defendant Graham back with instructions to arrest the subject and hold her in Chilton County until morning, when an officer from Hoover could pick her up.

26.    At approximately 9:45 p.m., Defendant Garris again returned to the Robinettes' car, this time to Tammy's window. He asked Tammy to step out of the car because there was a warrant for her arrest. Tammy stepped out of the car and immediately began asking questions about the warrant and what it was for. The officer said the warrant had been issued by the City of Hoover for a bad check and that he had confirmed with Hoover that officials there wanted her arrested and held for pick up. Tammy told the officer that she had never written a check in the City of Hoover and that she did not have a checking account. She then asked to whom the check had supposedly been written. The officer responded that the warrant was for a Tammy Parker, that he did not have any information about the check, and that Hoover would have information about the bad check on the warrant.

27.    Defendant Garris asked Tammy if she had anything in her pockets or on her person.

She told him no and pulled out the lining of her pockets for him to see. The officer asked Tammy to place her hands behind her, which she did; he then handcuffed her and placed her in a Chilton County law enforcement vehicle.

28.    James asked Defendant Garris what he should do and whether he should follow them to the jail. The officer told him to go home and wait on Tammy to call.

29.    Defendant Garris and another officer then drove Tammy to the Chilton County jail. During the trip, Tammy repeatedly told Defendant Garris and the other officer that she had never written a check to a business located in the City of Hoover and that she had no checking account. She also asked the officers for more information about the check, when it was written, and to whom it was written. Tammy also told the officers that she had never been in trouble with the law before and that she had never received so much as a traffic ticket before. The only thing the officers said to Tammy was that they would get all of that information from the warrant when they got to the jail.

30.    When Defendant Garris arrived at the Chilton County jail, he turned Tammy and all of her property in his possession, including her driver's license, over to a jail corrections officer who upon reasonable belief was Defendant Jason Davis. Defendant Garris negligently, recklessly, wantonly, and/or deliberately ignored Tammy's request that he check the warrant in spite of everything that Tammy had told him and the fact that he had told her that he would check the warrant when they arrived at the jail. Defendant Garris apparently did not even ask if Hoover had faxed a copy of the warrant, and he made no attempt to compare Tammy's identifying information to the identifying information about Tammy Stewart Parker on the NCIC database. Defendant Garris also apparently did not complete an arrest report or any similar report.

31.    Two people were involved in booking Tammy into the jail: Defendant Davis, who is believed to be a jail corrections officer, and Defendant Angie Smith who was either a law

enforcement officer or a jail corrections officer.  Davis and Smith completed several items of paperwork during which time they had Tammy's driver's license and the NCIC report containing all of the identifying information from the Hoover warrant that would have shown that Tammy was not the person wanted by Hoover.  Defendants Davis and Smith also may have had a copy of the warrant by the time they were booking Tammy.  Alternatively, they had the ability to telephone Hoover and request a copy of the warrant.

32.    While they were completing booking paperwork, either Defendant Davis or Defendant Smith asked Tammy if the information on her driver's license was correct and Tammy explained to both of them that her married name was now "Robinette."  She also gave them her current address.  Tammy also explained to both of them that she had never written a check in Hoover, had no checking account, and had never been in trouble with the law before.  Defendants Davis and Smith negligently, recklessly, wantonly, and/or deliberately told Tammy that they hadn't received the warrant from Hoover yet, even though it appears they may have or that they could have called and requested the warrant.  Defendants Davis and Smith also made no attempt to compare any of Tammy's identifying information to that on the NCIC report that they had in their position, which would have revealed, the same as the warrant, that Tammy was not the person wanted by Hoover.

33.    On the Inmate Data form completed by Defendant Davis and/or Smith, there was a place to state the charge against Tammy.  Rather that stating a charge in that space from either the NCIC report or the warrant, Defendant Davis and/or Smith wrote the words "Hold for Hoover Hit Confirmation in File."  Neither Defendant Davis nor Defendant Smith, through negligence, recklessness, wantonness, and/or deliberate indifference, took the time to look at the NCIC printout, or the fax machine, or call Hoover.

34.    During the entire time Defendants Davis and Smith were completing jail paperwork,

Tammy was wearing handcuffs.

35.    After filling out paperwork for a time, Defendant Davis and/or Smith took several items of personal property from Tammy.  Thereafter, Defendant Smith took Tammy into a room where she was instructed to take off all of her clothes.  After Tammy had completely disrobed, Defendant Smith instructed Tammy to squat with her knees apart, cough, and pull her buttock cheeks apart and cough.  After that, Defendant Smith gave Tammy an orange jumpsuit and instructed her to put it on, which Tammy did.

36.    Plaintiffs aver that Tammy was strip-searched pursuant to a policy or practice of Sheriff Fulmer and/or Warden Lockhart of strip-searching everyone booked into the Chilton County jail without regard to whether the offense for which the person was arrested was a felony or a misdemeanor, a violent offense or a non-violent offense, a drug offense or not; regardless of whether the individual being booked is suspected of having weapons, drugs, or other contraband; and regardless of whether the individual being booked is going to be placed in the general jail population or in an isolated holding cell.

37.    After the strip-search, Tammy was photographed and fingerprinted.  Then, Tammy was locked in a jail cell by herself where she was told she was waiting for someone to arrive from Hoover to pick her up and take her there.

38.    At approximately 11:15 p.m., a Sergeant G.W. Davis from the City of Hoover arrived.  Defendant Smith, the officer who had strip-searched Tammy, came and got Tammy out of the cell.  Defendant Smith had already given Sgt. Davis all of Tammy's personal belongings.  Sergeant Davis told Tammy that she could go into the restroom there in the jail and change back into her own clothes, which she did.  Both Defendant Smith and Sgt. Davis waited outside the door to the restroom while Tammy changed.

39.     After Tammy had changed clothes, Sgt. Davis handcuffed her and placed her in his police vehicle. The two of them then proceeded to the Hoover City Jail.

40.     During the trip to Hoover, Tammy told Sgt. Davis that she had never written a check in the City of Hoover, that she had no checking account, that she had never been in trouble with the law, and that she had never even received a traffic ticket before. She also asked questions about the bad check, such as to whom it had been written and when.

41.     As soon as they arrived at the Hoover Police Department and/or the Hoover City Jail, Sgt. Davis took Tammy inside and immediately asked another officer to bring him a copy of the warrant. When the warrant arrived, Sgt. Davis reviewed it. The officer who had brought the warrant removed Tammy's handcuffs and asked her to have a seat. Sgt. Davis and the officer who had brought him the warrant then left the room for several minutes. During that time Sgt. Davis telephoned a Chilton County dispatcher and notified her that the warrant had not been properly verified.

42.     When Sgt. Davis returned he told Tammy that she was not the person for whom the warrant had been issued and that he would drive her back to Chilton County immediately. He then let Tammy call her husband to let him know that she would be returning to the Chilton County jail where he could pick her up.

43.     On the return trip to the Chilton County jail, 15 or 20 minutes before they arrived, Sgt. Davis allowed Tammy to use his cell phone to again call her husband and let him know when to meet them.

44.     When they arrived at the Chilton County jail, Sgt. Davis drove to the back door. James Robinette was parked out front. When Sgt. Davis and Tammy reached the back door, Defendant Smith opened the door and said "Back so soon." Sgt. Davis told Smith that the warrant

had not been verified correctly. Defendant Smith responded that she had never even looked at the

warrant. Defendant Smith then took Tammy to the front door where James was waiting for her.

45.    For several weeks after this incident, Tammy feared that she might again be wrongly

believed to be the person wanted by Hoover and have to go through the same ordeal she had been

through on August 14 and 15, 2004. Because of that fear she left the house as little as possible and

did not want to drive for several weeks.

46.    On or about October 10, 2004, Plaintiff Tammy Robinette presented claims to the

Chilton County Commission and the City of Hoover, Alabama.

**CLAIMS ACTIONABLE UNDER 42 U.S.C. § 1983:**

## COUNT I - ARREST VIOLATED FOURTH AMENDMENT

47.    The Fourth Amendment to the U.S. Constitution secures an individual's right

against unreasonable seizure by requiring States to, among other things, provide a fair and

reliable determination of probable cause as a condition for any significant pretrial restraint of

liberty. Probable cause exists when the facts available at the time of the arrest would support

a reasonable person's belief that an offense has been, or is being, committed and that the

individual arrested is the guilty party. An arrest without probable cause violates the Fourth

Amendment.

48.    Here, the identifying information that Tammy Robinette provided to Defendant

Garris, the officer who took her license at the road-block, and that Garris in turn provided to

Defendant Graham foreclosed all reasonable possibility that Tammy was the person wanted by

Hoover for negotiating a worthless negotiable instrument. From the information available to

Defendants Garris and Graham, they could have and should have determined that Tammy Robinette

had a different middle name, different date of birth, different social security number, different

driver's license number, and different eye color than the person wanted by Hoover and therefore was not the person wanted by Hoover. Also, Tammy Robinette told Defendant Garris that she had never written a check in Hoover and had no checking account. An arresting officer and dispatcher who had actually compared of all of the identifying information that Tammy Robinette provided to Garris with identifying information available to them about the person wanted by Hoover could not reasonably have believed that Tammy Robinette was the person wanted in Hoover. By arresting Tammy anyway, Defendants Garris and Graham violated Tammy Robinette's Fourth Amendment right to be free from unreasonable seizure.

49.     Following her arrest without probable cause, Tammy Robinette was hand-cuffed, strip-searched, photographed, fingerprinted, and jailed without probable cause and in further violation of her Fourth Amendment rights.

50.     The wrongful actions of the individuals who were involved in the identification and arrest of Tammy Robinette were the direct result of a custom or practice of Sheriff Fulmer, Chief Deputy Sheriff Mayfield, the E-911 Board, and/or Cheryl Robinson created by failure to establish adequate policies or procedures for dispatchers and law enforcement officers to use when verifying the identity of persons named in the warrants; and/or the failure to adequately train dispatchers and law enforcement officers in the use of the policies and procedures promulgated to verify the identity of persons named in the warrants, and/or the failure to adequately enforce the use by dispatchers and law enforcement officers of the policies and procedures promulgated to verify the identity of persons named in the warrants. Said customs, policies, procedures, and/or failings constituted deliberate indifference to the Fourth Amendment rights of persons with whom the dispatchers and law enforcement officers came into contact in the course of performing their duties of arresting persons pursuant to outstanding warrants issued by another jurisdiction.

51.    Accordingly, Plaintiffs maintain, that the conduct of Defendants Garris, Graham, Fulmer, Mayfield, the E-911 Board, and/or Robinson violated Tammy Robinette's Fourth Amendment right to be free from arrest without probable cause and, as a result, she was injured or damaged as set forth herein.

## COUNT II - IMPRISONMENT VIOLATED FOURTEENTH AMENDMENT

52.    The Fourteenth Amendment to the U.S. Constitution secures an individual's right against false imprisonment without due process.  Exhibiting deliberate indifference to an individual's right against false imprisonment violates the Fourteenth Amendment.  Failure to take any steps to actually compare an individual's identifying information to that in an outstanding warrant for arrest of a person by a similar name, when a comparison would have shown that the individual was not the person wanted, has been ruled, prior to the events at issue in this case, to constitute deliberate indifference.

53.    Here, Defendants Graham, Garris, Davis, and/or Smith all had information available to them, before and after Tammy's arrest, that would have shown that Tammy was not the person wanted by Hoover.  Tammy also told Defendants Garris, Davis, and/or Smith facts that would have put a reasonable official on notice of the need to compare Tammy's identifying information to that on the warrant.  Nonetheless, none of these Defendants took any steps to actually compare Tammy's identifying information to the identifying information available to them about the person wanted by Hoover.  Had Defendants Graham, Garris, Davis, and/or Smith actually compared any of the identifying information available to them, they would have discovered that Tammy was not the person wanted by Hoover.  Defendants' failure to compare the identifying information constituted deliberate indifference to Tammy's right against false imprisonment.

54.    Defendants' failure to take steps to compare the identifying information that Tammy

provided with the available identifying information about the person wanted by Hoover was the direct result of a custom or practice of Sheriff Fulmer, Chief Deputy Sheriff Mayfield, the E-911 Board, Cheryl Robinson, and/or Warden Lockhart created by failure to establish adequate policies or procedures for dispatchers, law enforcement officers, and jail corrections officers to use when verifying the identity of persons named in the warrants; and/or the failure to adequately train dispatchers, law enforcement officers, and/or jail corrections officers in the use of the policies and procedures promulgated to verify the identity of persons named in the warrants; and/or the failure to adequately enforce the use by dispatchers, law enforcement officers, and/or jail corrections officers of the policies and procedures promulgated to verify the identity of persons named in the warrants.  Said failings constituted deliberate indifference to the Fourteenth Amendment rights of persons with whom dispatchers, law enforcement officers, and/or jail corrections officers came into contact in the course of performing their duties of identifying persons wanted on outstanding warrants issued by other jurisdictions.

55.     Accordingly, Plaintiffs maintain, that Defendants' conduct alleged herein violated Tammy's Fourteenth Amendment Due Process right to be free from false imprisonment and, as a result, she was injured or damaged as set forth herein.

## COUNT III - STRIP-SEARCH VIOLATED FOURTH AMENDMENT

56.     The Fourth Amendment to the U.S. Constitution secures an individual's right against unreasonable searches.

57.     Here, Tammy Robinette was arrested pursuant to a warrant for someone else issued by another jurisdiction for the non-violent misdemeanor crime of writing a bad check.  While being held at the Chilton County jail for pick up by another jurisdiction, she was subjected to a full strip-search.  During that search she was required to completely disrobe, squat with her knees apart,

cough, pull her buttock cheeks apart, and cough again.

58.    Chilton County jail personnel had no reason to believe that Tammy had weapons, drugs, or other contraband on her person.  After the strip search, Tammy was not placed in a general population cell but in a cell by herself.

59.    Plaintiffs aver that Tammy was strip-searched pursuant to a policy or practice of the Sheriff Fulmer and/or Warden Lockhart of strip-searching every person booked into the Chilton County jail regardless of whether the offense for which the person was arrested was a felony or a misdemeanor, a violent or a non-violent offense; regardless of whether the person being booked is suspected of having weapons, drugs, or other contraband; and regardless of whether the person being arrested is going to be placed in the general jail population or in an isolated holding cell.

60.    Plaintiffs aver that both the strip-search policy of the Sheriff Fulmer and/or Warden Lockhart and the strip-search of Tammy specifically violated her Fourth Amendment right to be free from unreasonable searches and, as a result, she was injured or damaged as set forth herein.

## COUNT IV - ROADBLOCK/LICENSE CHECK VIOLATED FOURTH AMENDMENT

61.    The Fourth Amendment to the U.S. Constitution secures an individual's right against unreasonable seizure and a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment.

62.    A roadblock or law enforcement checkpoint program whose primary purpose is to detect evidence of ordinary criminal wrongdoing and/or one conducted in a manner that permits the law enforcement officers conducting the stops unfettered discretion is unreasonable and therefore violates the Fourth Amendment.

63.    Here, the roadblock being conducted by the Chilton County Sheriff's Department pursuant to which Defendant Garris stopped the vehicle in which the Robinettes were traveling was

a law enforcement checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing and/or one in which law enforcement officers like Garris were permitted unfettered discretion. The checkpoint program therefore violated Plaintiffs' Fourth Amendment rights.

64.     In the absence of a valid checkpoint stop, a law enforcement officer must have a reasonable suspicion of the commission of a crime to stop and demand identification from individuals in a vehicle.

65.     Here, Defendant Garris detained the Robinettes and demanded both of their drivers' licenses without any reasonable suspicion of the commission of a crime on the part of either of them. Under the circumstances, Defendant Garris's request for both of the Robinettes' drivers' licenses violated the Fourth Amendment.

66.     Plaintiffs aver that Defendant Garris's unconstitutional conduct was result of a policy or practice of Sheriff Fulmer of conducting unconstitutional license checks and/or of training, encouraging, and/or permitting law enforcement officers to demand drivers' licenses from passengers without any reasonable suspicion of a crime.

**CLAIMS ACTIONABLE UNDER STATE LAW:**

## COUNT V - NEGLIGENCE AND/OR GROSS NEGLIGENCE

67.     Defendants Graham, Garris, Davis, and/or Smith each owed Plaintiff Tammy Robinette a ministerial duty to actually compare the identifying information she provided them to the available identifying information about the person wanted by the City of Hoover. Given the lack of similarity between the identifying information Tammy provided and the identifying information available to each of these Defendants about the person wanted by Hoover, no reasonable person in the position of Defendants Graham, Garris, Davis, and/or Smith could have believed that Tammy

was the person wanted by Hoover. Defendants' failure to carry out their ministerial duties of actually comparing the identifying information before arresting Tammy and/or before booking Tammy was a breach of these Defendants' ministerial duties that damaged both Plaintiffs and is therefore actionable as negligence and/or gross negligence.

68.    Further, Defendants Sheriff Fulmer, Chilton County, the Chilton County Commission, the E-911 Board, and/or Warden Lockhart are vicariously liable for the negligence and/or gross negligence of their employees in performing their ministerial functions.

69.    Plaintiffs aver that employees of the City of Hoover had a ministerial duty to ask for more identifying information on the subject being held by the Chilton County Sheriff's Department than was actually asked for and that the failure to ask for additional identifying information was negligence for which the City of Hoover is liable.

70.    Plaintiffs further aver that employees of the City of Hoover had a ministerial duty to fax the warrant to the Chilton County Sheriff's Department sooner than it was actually faxed and that the failure to fax it sooner was negligence for which the City of Hoover is liable.

## COUNT VI - FALSE ARREST AND/OR IMPRISONMENT

71.    Defendants Graham, Garris, Davis, and/or Smith were responsible for Tammy's false arrest and imprisonment for several hours without probable cause and/or without a valid warrant. Said conduct is actionable as false arrest and/or false imprisonment.

72.    Defendants Sheriff Fulmer, Chilton County, the Chilton County Commission, the E-911 Board, and/or Warden Lockhart are vicariously liable for the false arrest and/or imprisonment of Tammy.

## COUNT VII - MALICIOUS PROSECUTION

73.    Defendants Graham, Garris, Davis, and/or Smith were responsible for the malicious

prosecution of Plaintiff Tammy Robinette without probable cause.

74.     Defendants Sheriff Fulmer, Chilton County, the Chilton County Commission, the E-911 Board, and/or Warden Lockhart are vicariously liable for the malicious prosecution of Plaintiff Tammy Robinette without probable cause.

## COUNT VIII - WANTONNESS, WILFULNESS, AND/OR BAD FAITH

75.     The failure of Defendants Graham, Garris, Davis, and/or Smith to make any effort to compare the identifying information that Tammy provided them to that of the person wanted by Hoover, and/or these Defendants' misidentification of Tammy under the circumstances, and/or these Defendants' continued detention of Tammy after any reasonable officer with the information available to these Defendants would have known that there was no probable cause for believing Tammy was the person wanted by Hoover was the result of wrongful conduct that was wanton, malicious, wilful, and/or in bad faith.

## COUNT IX - ASSAULT AND BATTERY

76.     Defendants Davis and/or Smith, by their strip search of Plaintiff Tammy Robinette, caused her fear and apprehension of harm, and they are therefore liable for assault and battery.

77.     To the extent Defendants Davis and/or Smith were acting pursuant to jail policy or practice in conducting the strip search of Tammy, Defendants Fulmer, Lockhart, Chilton County, and/or the Chilton Commission are vicariously liable for the assault and battery.

## COUNT X - FAILURE TO TRAIN AND/OR SUPERVISE

78.     Defendants Fulmer, Chilton County, the Chilton County Commission, the E-911 Board, Mayfield, Robinson, and/or Lockhart are responsible for training their employees in the identification of wanted persons, communication with other jurisdictions about wanted persons, the conducting of license checks, and/or the booking of detainees.  These same Defendants are also

responsible for supervising their employees to ensure that the employees know how to do all of these things and actually do them.

79.    The circumstances of this case demonstrate a failure on the part of Defendants Fulmer, Chilton County, the Chilton County Commission, the E-911 Board, Mayfield, Robinson, and/or Lockhart to train and/or supervise their employee in the identification of wanted persons, communication with other jurisdictions about wanted persons, the conducting of license checks, and/or the booking of detainees.  Their failings resulted in the wrongful arrest and imprisonment of Tammy Robinette.  Defendants Fulmer, Chilton County, the Chilton County Commission, the E-911 Board, Mayfield, Robinson, and/or Lockhart are liable for their training failures that resulted in Tammy's arrest and detention.

## COUNT XI - ROADBLOCK/LICENSE CHECK VIOLATED

## ALABAMA CONSTITUTION

80.    Article I § 5 of the Alabama Constitution, like the Fourth Amendment to the U.S. Constitution, secures an individual's right against unreasonable seizure, and a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Article I § 5.

81.    A roadblock or law enforcement checkpoint program whose primary purpose is to detect evidence of ordinary criminal wrongdoing and/or one conducted in a manner that permits the law enforcement officers conducting the stops unfettered discretion is unreasonable and therefore violates Article I § 5 of the Alabama Constitution.

82.    Here, the roadblock being conducted by the Chilton County Sheriff's Department pursuant to which Defendant Garris stopped the vehicle in which the Robinettes were traveling was a law enforcement checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing and/or one in which law enforcement officers like Garris were permitted

unfettered discretion.  The checkpoint program therefore violated Plaintiffs' rights secured by Article I § 5 of the Alabama Constitution.

83.    In the absence of a constitutional checkpoint stop, a law enforcement officer must have a reasonable suspicion of the commission of a crime to stop and demand identification from individuals in a vehicle.

84.    Here, Defendant Garris detained the Robinettes and demanded both of their drivers' licenses without any reasonable suspicion of the commission of a crime on the part of either of them. Under the circumstances, Defendant Garris's request for both of the Robinettes' drivers' licenses violated Article I § 5 of the Alabama Constitution.

85.    Plaintiffs aver that Defendant Garris's unconstitutional conduct was result of a policy or practice of Sheriff Fulmer of conducting unconstitutional license checks and/or of training, encouraging, and/or permitting law enforcement officers to demand drivers' licenses from passengers without any reasonable suspicion of a crime.

## COUNT XII - LOSS OF CONSORTIUM

86.    As a result of Defendants' conduct, Plaintiff James Robinette was deprived of his wife's services and suffered the mental and emotional anguish of having his wife arrested and taken from him.

**DAMAGES:**

87.    As a result of Defendants' conduct Tammy Robinette suffered deprivation of liberty, distress, humiliation, embarrassment, and fear that continued during and after her release from wrongful incarceration.  For several weeks after this incident, Tammy feared that she might again be wrongly believed to be the person wanted by Hoover and have to go through the same ordeal she had been through on August 14 and 15, 2004.  For several weeks, Tammy rarely left the house and

did not drive.  Also, Tammy now has a recorded mug shot and fingerprints and an FBI file that she did not have before this incident.

88.    As a result of Defendants' conduct James Robinette suffered the mental and emotional anguish of having his wife arrested and taken from him and the loss of her services at home because of her emotional distress over the incident and her fear of re-arrest that continued after her release from wrongful incarceration.

WHEREFORE  Plaintiffs claim compensatory and punitive monetary damages from Defendants in an amount to be determined by a jury and such other relief to which the facts of this Amended and Substituted Complaint show Plaintiffs are entitled.

**PLAINTIFFS DEMAND A JURY TRIAL OF ALL ISSUES IN THIS ACTION**

s/ George B. Azar
George B.  Azar (AZA002)
s/ Elizabeth C. Wible
Elizabeth C. Wible (WIB002)
Attorneys for Plaintiffs

OF COUNSEL:
AZAR & AZAR, L.L.C.
260 Washington Avenue
P.O. Box 2028
Montgomery, Alabama 36102-2028
Telephone: (334) 265-8551
Fax: (334) 261-3489
gazar@azarlaw.com
ewible@azarlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

(NOT APPLICABLE)

I hereby certify that I have mailed by U.S. Postal Service, postage prepaid, the foregoing document to the following non-CM/ECF participants:

Billy Wayne Fulmer
Sheriff of Chilton County, Alabama
500 Second Avenue North
Clanton, Alabama, 35045-3421

Warren Garris
500 Second Avenue North
Clanton, Alabama, 35045-3421

Jason Davis
Chilton County Sheriff's Department
500 Second Avenue North
Clanton, Alabama, 35045-3421

Linda Graham
81 Mary Street
Thorsby, Alabama, 35171

The City of Hoover, Alabama
100 Municipal Drive
Hoover, Alabama, 35216

Collin Flores
100 Municipal Drive
Hoover, Alabama, 35216; and

Angie Smith, formerly named as Fictitious Defendant A
the female officer who strip-searched Tammy Parker at the
Chilton County jail on or about August 14, 2004
500 Second Avenue North
Clanton, Alabama, 35045-3421

COUNSEL FOR SHERIFF FULMER
C. Winston Sheehan, Jr. Esquire
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36102-2148

COUNSEL FOR THE CITY OF HOOVER, ALABAMA
E. Dianne Gamble, Esquire
Mark S. Boardman, Esquire
BOARDMAN, CARR & HUTCHESON, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211

s/George B. Azar
s/ Elizabeth C. Wible

N:\WP51\GBA\Rob-Chi\COMPLAINT-1st Amend.wpd