IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

TAMMY JEAN ROBINETTE and )
JAMES BRYAN ROBINETTE, )
)
     Plaintiffs, )
)
v. )    CASE NO. 2:06-cv-556-MHT
)
BILLY WAYNE FULMER, et al. )
)
)
     Defendants. )

BRIEF IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANT LINDA BINGHAM

A. Introduction

This action was commenced by plaintiffs Tammy Jean Robinette and James Bryan Robinette in the United States District Court for the Middle District of Alabama on June 21, 2006. The claims alleged in the complaint in this case arise out of the arrest of plaintiff Tammy Robinette on August 14, 2004 by Chilton County Deputy Sheriff Warren Garris.

The complaint in this case alleges the following: Defendant Linda Bingham[1] was, at the time of the occurrence of the matters at issue in this case, an E-911 dispatcher in Chilton County, Alabama. Plaintiff Tammy Robinette's arrest came

---

[1] At the time of the occurrence of the matters at issue in this case, Linda Bingham was known as Linda Graham. She is now known as Linda Bingham.

about after a motor vehicle in which she was traveling as a passenger was stopped at a roadblock operated by Chilton County Sheriffs Deputies. At the request of Deputy Warren Garris, Tammy Robinette produced her drivers license which bore the name "Tammy Sanders Parker." Garris provided the drivers license information to defendant Bingham, who ran an NCIC check utilizing the information.

The complaint alleges that following the NCIC check, plaintiff Tammy Robinette was arrested as a result of a mistaken identification of her for another individual with a similar name, who was the subject of an outstanding City of Hoover, Alabama arrest warrant. The complaint alleges that Bingham made the mistake when she was speaking on the telephone with a City of Hoover police officer attempting to confirm the identity of Robinette as the person sought in the warrant. The complaint alleges that during that conversation, Bingham "read [the Hoover officer] the social security number of Tammy Stewart Parker, not the social security number of Tammy Sanders Parker (Robinette)" by reading the Hoover officer "the social security number from the information Hoover ha[d] entered on the NCIC database about the warrant for Tammy Stewart Parker."

Numerous federal and state claims are alleged against defendant Bingham in the plaintiffs' complaint. Defendant Bingham has filed a motion to dismiss. This brief is submitted in support of the motion to dismiss of defendant Bingham.

B.    Plaintiffs' Official Capacity Claims are Due
to be Dismissed.

Plaintiffs have sued defendant Bingham both in her individual and official

capacities in this action.  (Amended Complaint ¶ 12).  The complaint alleges that

defendant Bingham was, on the occasion at issue in this case, "employed by the E-

911 Board as a dispatcher."  Both the Chilton County E-911 Board and Chilton

County, Alabama (as well as the Chilton County Commission) are separately named

defendants in this action.  Because plaintiffs' employers are a separately named

defendants, the plaintiffs' claims against defendant Bingham in her official capacity

are superfluous and redundant and are due to be dismissed.

"[O]fficial capacity suits generally represent only another way of pleading an

action against the entity of which the officer is an agent." Brandon v. Holt, 469 U.S.

464, 472 n. 21, 105 S.Ct. 873, 878 n. 21 (1985).  See Monell v. Department of Social

Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55 (1978).  Such suits are

"in actuality, suits directly against [the governmental entity] that the officer

represents." Busby v. City of Orlando, 931 F. 2d 764, 776 (11th Cir. 1991),  citing

Kentucky v. Graham, 473 U.S. 159, 165-66, 105S.Ct. 3099, 3105(1985). Because the

E-911 Board, the County, and the County Commission are all named as defendants

in this action, plaintiffs' official capacity claims against defendant Bingham are

superfluous and redundant and should be dismissed. <u>Busby</u>, 931 at 776. ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local governmental officials, because local government units can be sued directly . . .").

      C.    Plaintiffs Have No Maintainable Claim under
            the Fourteenth Amendment in this Action.

Plaintiff Tammy Robinette's claims alleged under 42 U.S.C. § 1983 in Count II of the complaint for violation of her Fourteenth Amendment rights arise from her alleged wrongful arrest in this case. Plaintiffs allege in Count II that "Defendants' conduct alleged herein violated Tammy's Fourteenth Amendment due process right to be free from false imprisonment . . ." (Amended Complaint ¶ 55). Tammy Robinette has, however, no maintainable Fourteenth Amendment claim premised upon the matters alleged in the complaint. It is now clearly established law that claims asserted under 42 U.S.C. § 1983 arising from an alleged wrongful arrest are cognizable only under the Fourth Amendment, and not the Fourteenth Amendment to the Constitution.

Section 1983 creates a private right of action for damages against persons whose conduct "under color of" state law deprives a plaintiff of "any rights,

<div align="center">4</div>

privileges, or immunities secured by the Constitution and laws." There are two basic elements to any § 1983 claim: (1) an act or omission depriving the plaintiff of a right, privilege, or immunity secured by the United States Constitution or by federal law; or (2) the deprivation must be caused by a person "acting under color of " state law. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). As its statutory text implies, § 1983 does not itself create any substantive rights. See Albright v. Oliver, 510 U.S. 266, 269-71, 114 S.Ct. 807, 811 (1994). Rather, it is merely a vehicle for vindicating rights that are conferred elsewhere by federal law. Id. Consequently, in analyzing any § 1983 claim, the first step is to "identify the specific constitutional [or federal] right allegedly infringed." Albright, 510 U.S. at 271, 114 S.Ct. at 811. Then, once the right is identified, the second step is to determine whether a deprivation of that right has in fact occurred, and this can only be done by applying the standards applicable to that particular constitutional or federal right. See Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871(1989).

The Supreme Court in Graham set out the guiding principal for the analysis to be conducted in these types of cases. In Graham, the Court stated that where a particular Amendment to the Constitution "provide[s] an explicit textual source of constitutional protection" against a particular sort of government behavior, "that

5

Amendment, not the generalized notion of 'substantive due process' must be the guide for analyzing" the § 1983 claim. <u>Graham</u>, 490 U.S. at 395, 109 S.Ct. at 1871. See also <u>Albright</u>, 510 U.S. at 273, 114 S.Ct. at 811. The plaintiff in <u>Albright</u>, upon learning that an arrest warrant had been issued charging him with the sale of a substance which appeared to be an illegal drug, surrendered to the defendant police officer and was arrested. After a state court dismissed the charges arising from the arrest on the basis that the charge did not state an offense under state law, the plaintiff filed suit. 510 U.S. at 268, 114 S.Ct. at 810. The Supreme Court rejected the plaintiff's contention in <u>Albright</u> that because he had surrendered voluntarily following the issuance of an arrest warrant, his claim should properly be analyzed under the Fourteenth Amendment, and not the Fourth. 510 U.S. at 274-75, 114 S.Ct. at 813-14. In the course of discussing the nature of the claim presented in <u>Albright</u>, Justice Rehnquist observed that plaintiff's "surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment." <u>Id.</u> at 271; 114 S.Ct. at 812.

Relying on <u>Graham</u> and <u>Albright</u>, numerous courts have concluded that claims based on allegations of false arrest are properly maintainable *only* under the Fourth Amendment and are thus not actionable under the Fourteenth Amendment as a substantive due process violation. See, e.g., <u>Walker v. Briley</u>, 140 F.Supp.2d 1249,

1260 n.8 (N.D. Ala. 2001) (rejecting plaintiff's false-arrest claim based on substantive

due process component of the Fourteenth Amendment separate and apart from the

plaintiff's false-arrest claim under the Fourth Amendment); <u>Dorsey v. Wallace</u>, 134

F.Supp.2d 1364, 1374 (N.D. Ga. 2000) (dismissing false-arrest claim under the due

process clause of the Fourteenth Amendment because "[t]he deprivations of which

the plaintiffs complain are protected under the Fourth Amendment"); <u>Snow v. Village

of Chatham</u>, 84 F.Supp.2d 322, 327 (N.D. N.Y. 2000) ("plaintiff's Fourteenth

Amendment claim[] must be dismissed since the Fourth Amendment, and not some

generalized concept of substantive due process, provides the constitutional

foundation for false arrest claims.")[2]

　　　In any event, even if a Fourteenth Amendment substantive due process claim

could be maintained under § 1983 for the matters alleged in the complaint in this

case, it is clear that the allegations of the complaint in this case do not rise to the level

of a maintainable Fourteenth Amendment claim.  As the Eleventh Circuit has stated:

> Under Collins [v. City of Harker Heights, 502 U.S. 115,
> 112 S.Ct. 1061 (1992)], state and local government
> officials violate the substantive due process rights of

---

[2] To the extent that plaintiffs contend that their Fourteenth Amendment substantive due process claim derives from an alleged malicious prosecution of Tammy Robinette (which is not alleged), it is clear that any such claim would still arise under the Fourth, and not the Fourteenth Amendment.  See <u>Whiting v. Traylor</u>, 85 F.3d 581(11th Cir. 1996).

individuals not in custody only when those individuals cause harm by engaging in conduct that is 'arbitrary, or conscience shocking, in a constitutional sense,' and that standard is to be narrowly interpreted and applied.

White v. Lemacks, 183 F.3d 1253, 1259 (11th Cir. 1999). The Supreme Court has repeatedly admonished lower courts not to expand the limits of substantive due process. See County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S.Ct. 1708, 1714-15 (1998); Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068-69 (1992). The Supreme Court has held that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense. Lewis, 523 U.S. at 846, 118 S.Ct. at 1716. While the Eleventh Circuit has noted that "at the very least," a substantive due process violation would require a showing of deliberate indifference, Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305-06 (11th Cir. 2003), outside of the context of persons held in custody of the state, the Eleventh Circuit has yet to find that an act taken with deliberate indifference was conscience shocking.[3] In fact, the Eleventh Circuit in Nix v. Franklin County School

---

[3] The custodial exception arises "from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves." White, 183 F.3d at 1257. The custodial exception generally arises in the context of a substantive due process claim alleging breach of a duty to protect. See Collins, 503 U.S. at 127-28, 112 S.Ct. at 1069-70 (listing the situations in which the Court has held that the substantive due process clause imposes a duty on the state to take care of those who have already been denied their liberty, with the only situations being cases in which

8

Dist., 311 F.3d 1373, 1377 (11th Cir. 2002) flatly stated that: "This Court has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting . . ." In Waddell, in commenting upon its observation that "at the very least," a substantive due process violation would require a showing of deliberate indifference, the Eleventh Circuit indicated that the standard of culpability for a substantive due process claim may in fact be significantly higher. The Court stated: "We do not rule out . . . that the correct legal threshold for substantive due process liability in a [non-custodial case] is actually far higher." 329 F.3d at 1306 n. 5. Indeed, the Eleventh Circuit has repeatedly explained that even *intentional* actions by officials will seldom rise to the level of conscience shocking conduct. Waddell, 329 F. 3d at 1305 ("And even intentional wrongs seldom violate the Due Process Clause."); Nix, 311 F.3d at 1378 (". . .[E]ven an act at the upper end of the culpability spectrum – an intentional act – will not necessarily support a due-process claim.").

---

the plaintiff was physically confined by the state, for example, as a pretrial detainee, person confined in a mental institution, prisoner, and persons under arrest).  See also Butera v. District of Columbia, 235 F.3d 637, 648 (D.C. Cir. 2001) (explaining that the custody exception to the general rule that there is no duty to protect protected by the substantive component of the due process clause of the Fourteen Amendment, is to be "narrowly construed," and does not apply in all situations where the police have physically restrained an individual).

9

The fact that the government actor's conduct may arise to the level of a state law tort likewise does not satisfy the degree of culpability required for a substantive due process violation.    Federal law, not state law, determines the existence of substantive due process rights.  See <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983.").  And federal substantive due process law is in no way defined by or coextensive with state tort law. "Because the Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society',  we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." <u>Collins</u>, 503 U.S. at 128, 112 S.Ct. at 1070. See also <u>Paul v. Davis</u>, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160 (1976) (refusing to find that the state tort of defamation is somehow a part of the federal constitution because "such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States"); <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994) (explaining that "remaining largely outside the scope of substantive due process jurisprudence [is] tort law").

The Eleventh Circuit's prior precedent in the substantive due process area make it clear that the allegations of this case are wholly insufficient to make out a "shocks the conscience" substantive due process claim, if, indeed, one could exist at all arising out of a claim bottomed upon an alleged wrongful arrest. In <u>Nix</u>, the plaintiff sued on behalf of her son who was killed at school when he touched a live wire that was being used during his electromechanical class as a demonstration on the basics of electricity. 311 F.3d at 1374. As part of the demonstration, the teacher set up a live wire that ran across the student's desk. <u>Id</u>. The wire was exposed at certain points so that the students could measure the voltages of the electrical current. <u>Id.</u> In this demonstration, the teacher decided to run 700 volts through the wire. The teacher knew that 700 volts was enough to kill a student if the student touched the exposed part of the wire during the demonstration. <u>Id</u>. The teacher also knew that "students often touched the electrical probes and that some students were being shocked." <u>Id</u>. at 1375. The teacher *knew* that "students in a group as large as his class would inevitably touch live wires, that students would occasionally get their hands in the wrong place at the wrong time, *and that some students were intentionally shocking themselves or one another*." <u>Id.</u> (internal quotes omitted; emphasis added). Nevertheless, even though he knew that some students were intentionally shocking themselves and others, and that 700 volts would kill any student who did touch the

11

wire, with this knowledge the teacher still decided to run 700 volts through the line. A student ended up touching the line and died of electrical shock. Id. at 1375.

The Eleventh Circuit held that the teacher's conduct, even though deliberately indifferent, did not rise to the level a substantive due process constitutional violation. "This court has been explicit in stating that deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting . . ." Nix, 311 F.3d at 1377. The Court further held that the teacher's conduct did not shock the conscience. Id. at 1378-79.

The same is true of the allegations in this case. Because the Eleventh Circuit has held that this Court has held that even *intentional* actions by officials will seldom rise to the level of conscience shocking, Waddell, 329 F.3d at 1305; Nix, 311 F.3d at 1378, it cannot be said that the alleged mistaken providing by defendant Bingham, in her capacity as a police dispatcher, of alleged erroneous information which led to the plaintiff's arrest on an arrest warrant issued in the name of a person with a similar name was conduct violative of the substantive component of the Due Process Clause.

       D.     Even if Plaintiffs Have Alleged a Substantive Due Process Violation, It is not Violative of Clearly Established Law.

As the foregoing demonstrates, plaintiffs have no maintainable claim under § 1983 for deprivation of substantive due process under the Fourteenth Amendment.

However, even if it could be said that such a claim has been alleged, it is not one which can survive the assertion by defendant Bingham of the defense of qualified immunity. There is no clearly established law that the facts alleged by plaintiffs in the complaint give rise to a deprivation of substantive due process.

Defendant Bingham has moved the Court to dismiss the plaintiffs' § 1983 individual capacity claims contained in the amended complaint for failure to state a claim and also has asserted the defense of qualified immunity. The two issues are intertwined. See Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995):

> As the Supreme Court states, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 [111 S.Ct. 1789, 1793] (1991).

The Supreme Court has developed an objective-reasonableness test for evaluating claims of qualified immunity in § 1983 cases. Under this test, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 801, 102 S.Ct. 2727, 2729 (1982). According to the Supreme Court, qualified immunity "gives ample room for mistaken judgments"

13

because it affords protection to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343, 349, 106 S.Ct. 1092, 1097, 1100 (1986).

The plaintiffs' burden of showing that the government officer or employee violated "clearly established" law is a heavy and difficult one to satisfy. The Supreme Court's decision in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987) explains what is meant by "clearly established" law:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted). According to the Supreme Court, the impermissible consequence of applying the "clearly established" law test too generally is that "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging [a] violation of extremely abstract rights." 483 at 639, 107 S.Ct. at 3039. In accordance with Anderson, the Eleventh Circuit has recognized that a plaintiff cannot

14

prove a violation of "clearly established" law simply by "citing to general rules or abstract rights," Wilson v. Strong, 156 F.3d 1131, 1134 (11th Cir. 1998). Belcher v. City of Foley, 30 F.3d 1390, 1395 (11th Cir. 1994)

In Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516 (2002), the Supreme Court stated that the "salient question" for purposes of determining whether a violation of clearly established law has occurred is "whether the state of the law [at the time of the challenged conduct] gave [the government actor] *fair warning* that [his or her] alleged treatment [of the plaintiff] was unconstitutional." (emphasis added). The Supreme Court has cautioned, however, that the inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). Thus, unless a plaintiff in a § 1983 case can point to a case that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer from liability under 42 U.S.C. § 1983. See e.g., Saucier, 533 U.S. at 201-02, 209, 121 S.Ct. at 2160, ___ (granting qualified immunity where the plaintiff had not "identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did . . ."). See also Vinyard v. Wilson, 311 F.3d 1340, 1351-1353 (11th Cir. 2002) (recognizing that, based on the Supreme Court's decision in Hope that unless a

15

constitutional provision directly prohibits the challenged conduct, or a case had previously held the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity, a § 1983 plaintiff must show that case law with "a very high degree of prior factual particularity" had previously determined the conduct to be unconstitutional).

Given the holdings of Graham and Albright that claims which arise from an allegation that a plaintiff has been unlawfully deprived of their freedom by state actors are analyzed only under the Fourth, and not the Fourteenth, Amendment, together with the numerous lower federal courts which have held the same thing, it cannot be said by any measure that the law is "clearly established" that the facts alleged by plaintiffs in their complaint in this case, as they relate to defendant Bingham, constitute a violation of the Fourteenth Amendment. In fact, the contrary is true. If plaintiffs have a maintainable claim at all against defendant Bingham in this case, it is a claim that is required to be pursued under the Fourth Amendment. At a minimum, because the law is certainly not clearly established that plaintiffs have a maintainable Fourteenth Amendment claim in this action, defendant Bingham is entitled to qualified immunity from the claims alleged by plaintiffs against her in Count II of the complaint in this case.

16

E.    Plaintiff Has No Maintainable State Law Tort
      Claim for "Gross Negligence."

In Count V of their complaint in this case, plaintiffs allege a claim against defendant Bingham for "gross negligence." No such claim exists as a cognizable cause of action under Alabama law. The Alabama Supreme Court has spoken directly to this issue. See Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala. 1998)("The word 'gross' when used in connection with the word 'negligence' implies nothing more than simple negligence.")

F.    Because Plaintiff Tammy Robinette Was Arrested
      Pursuant to a Valid Arrest Warrant, She Has No
      Maintainable State Law False Arrest or False
      Imprisonment Claim in this Case.

In this action, plaintiff Tammy Robinette alleges that she was the victim of mistaken identification by defendants Bingham and Garris when she was erroneously arrested on an arrest warrant issued by the City of Hoover Police Department for a person named Tammy Stewart Parker (Amended Complaint ¶¶ 17-27). Plaintiff alleges that her arrest came about at a roadblock being operated by Chilton County Sheriff's Deputies. (Amended Complaint ¶ 17). After the vehicle driven by her husband was stopped at the roadblock, plaintiff Tammy Robinette produced a drivers license to Deputy Sheriff Garris which was issued in the name of "Tammy Sanders Parker," which was Tammy Robinette's maiden name. Id. According to the

17

complaint, Deputy Garris telephoned the information shown on the drivers license to

defendant Bingham who ran an NCIC check on the drivers license to check on

outstanding warrants. (Amended Complaint ¶ 18, 19). According to the complaint,

"defendant Bingham's NCIC check on the name 'Tammy Sanders Parker' revealed

an outstanding warrant issued by the City of Hoover Police Department for a person

named 'Tammy Stewart Parker' for the misdemeanor offense of negotiating a

worthless instrument." (Amended Complaint ¶ 20). The complaint further alleges

that defendant Bingham erroneously identified plaintiff Robinette as the "Tammy

Stewart Parker" who was the subject of the outstanding arrest warrant and, as a

consequence, plaintiff Tammy Robinette was arrested by Deputy Garris. (Amended

Complaint ¶¶ 23-27).

Because plaintiff Robinette was, by the allegations of her complaint in this

case, arrested pursuant to a valid arrest warrant, even though she was not the person

named in the warrant, she has no maintainable false arrest or false imprisonment

claim under Alabama law. See Montgomery v. City of Montgomery, 732 So.2d 305

(Ala. Civ. App. 1999). In Montgomery, a virtually identical case to this case was

presented. An individual by the name of Robert Avery Montgomery was arrested by

police officers pursuant to an arrest warrant issued for a person named "Robert E.

Montgomery." The "Robert E. Montgomery" named in  the arrest warrants was

18

Robert Emit Montgomery, a different person than Robert Avery Montgomery. 723

So.2d at 306-07. The plaintiff in <u>Montgomery</u> protested to the arresting officers, as

plaintiff Tammy Robinette claims she did in this case, that the wrong person had been

arrested. <u>Id.</u> at 307. Arrestee's mother, who was present at the time of the arrest,

referred to the arrestee as "Avery" on several occasions in the presence of the

officers, and the arrestee pointed out to the officers that his middle initial was

different than the person named in the arrest warrant. <u>Id.</u> at 306-07.

After it was later determined that the plaintiff in <u>Montgomery</u> was not the

person named in the warrant, the charges against him were dismissed. <u>Id.</u> The

plaintiff in <u>Montgomery</u> then brought an action against the City of Montgomery and

the officers involved in his arrest. He asserted numerous claims in his complaint

including claims for false arrest and false imprisonment. The Alabama Court of Civil

Appeals held that, because the plaintiff had been arrested pursuant to a validly issued

arrest warrant, he could have no maintainable claim for false arrest or false

imprisonment as a matter of law. In so holding, the Court stated: "The law in

Alabama is clear that a plaintiff is not entitled to recover for false arrest or

imprisonment where he or she is arrested pursuant to a valid warrant issued by a

lawfully authorized person . . . Under such circumstances, 'neither the arrest nor the

subsequent imprisonment is "false" and, as a consequence, the complaining party's

action must be one for malicious prosecution.' " 732 So.2d at 308 quoting Blake v. Barton Williams, Inc., 361 So.2d 376, 378 (Ala. Civ. App. 1978).

As a consequence of the fact that the complaint in this case affirmatively alleges that plaintiff Tammy Robinette was arrested, albeit mistakenly, under an arrest warrant issued for another individual, she has no maintainable false arrest or false imprisonment claim in this action as a matter of law. Plaintiffs make no contention that the City of Hoover Police Department arrest warrant was in any way improper, unauthorized, or invalidly issued. Rather, their sole claim is that plaintiff Tammy Robinette was not the person named in the warrant. Under these circumstances, Alabama law does not authorize a tort claim for false arrest or false imprisonment.

<div align="center">Conclusion</div>

The following claims in this action are due to be dismissed: (1) the plaintiffs' claims alleged against defendant Bingham in her official capacity; (2) their claims for deprivation for Tammy Robinette's substantive due process rights; (3) their claims for "gross negligence"; and (4) their claims for false arrest and false imprisonment. These claims do not, as a matter of law, constitute maintainable claims in this action and are due to be dismissed.

<div style="margin-left: 40%;">
s/ George W. Royer, Jr.
George W. Royer, Jr.
</div>

LANIER FORD SHAVER & PAYNE, P.C.
200 West Side Square
Suite 5000
Huntsville, AL 35801
Phone: 256-535-1100
Fax: 256-533-9322
E-mail: gwr@lfsp.com

Attorneys for Defendant Linda Bingham

CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing upon the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Elizabeth Camilla Wible, Esquire
> George Bernard Azar, Esquire
> AZAR & AZAR
> Post Office Box 2028
> Montgomery, AL 36102-2028
>
> C. Winston Sheehan, Jr., Esquire
> BALL, BALL, MATTHEWS & NOVAK, P.A.
> Post Office Box 2148
> Montgomery, AL 36102-2148
>
> Elizabeth Dianne Gamble, Esquire
> Mark S. Boardman
> BOARDMAN, CARR, WEED, & HUTCHESON, P.C.
> 400 Boardman Drive
> Chelsea, AL 35043-8211

on this the 14th day of August, 2006.

> s/ George W. Royer, Jr.
> George W. Royer, Jr.

22